# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| ROSEMARIE HERNANDEZ, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:15-CV-268-JEM |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff on July 17, 2015, and Brief in Support of Plaintiff's Motion for Summary Judgment [DE 15], filed on November 9, 2015. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On February 12, 2016, the Commissioner filed a response, and on March 1, 2016, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.    Procedural Background**

On May 21, 2013, Plaintiff filed an application for benefits alleging that he became disabled on December 19, 2011. Plaintiff's application was denied initially and upon reconsideration. On July 24, 2014, and January 13, 2015, Administrative Law Judge ("ALJ") Romona Scales held hearings at which Plaintiff, with an attorney representative, a medical expert, and a vocational expert ("VE") testified. On February 27, 2015, the ALJ issued a decision finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through December 30, 2016.

2. The claimant has not engaged in substantial gainful activity since December 19, 2011, the alleged onset date.

3. The claimant has the following severe impairments: diabetes mellitus, an obese body habitus, mild thoracic degenerative changes, and the late effects of a benign meningioma removal.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for up to 4 hours in an 8-hour work period. The claimant can occasionally climb rams and stairs, but never ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and/or crawl; the claimant should never reach overhead with her left non-dominant upper extremity, and she is capable of frequent use of near and far visual acuity. The work cannot require fine or precise vision for small objects, but the claimant remains capable of seeing and handling medium to large objects, and she is able to avoid normal workplace hazards. The claimant must avoid concentrated exposure to environmental irritants such as fumes, odors, dust, gases, and areas of poor ventilation.

6. The claimant is unable to perform any past relevant work.

7. The claimant was 47 years old, which is defined as a young individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching age.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

> finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability from December 19, 2011, through the date of the decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Factual Background

Plaintiff suffers from diabetes mellitus. In 2012, she had a meningioma removed from her brain, and has complained of blurred vision in her left eye and headaches since the surgery. She has carpal tunnel syndrome, reduced visual acuity, an adjustment disorder, acromioclavicular joint osteoarthritis, left knee degenerative joint disease, hypertension, and a restrictive pulmonary disorder.

## III. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "A reversal and remand may be required, however, if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of

4

evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him or her from doing her previous work, but considering his or her age, education, and work experience, it must also prevent him or her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no,

then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's Residual Functional Capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**IV.  Analysis**

    A.    <u>Compliance with Treatment</u>

The ALJ in this case discounted much of Plaintiff's testimony about her limitations and found that her limitations would not be as severe as described in the record if she were fully compliant with her medical treatment. Plaintiff argues that the ALJ did not explore Plaintiff's reasons for her supposed noncompliance with treatment. The Commissioner argues that the ALJ appropriately inquired into Plaintiff's noncompliance with her diabetes treatment at the hearings and that there is medical evidence in the record indicating that she is not fully compliant with her medication regime.

When considering non-compliance with treatment as a factor in determining whether a claimant is impaired, an ALJ is required to make a determination about whether non-compliance with treatment is justified and develop the record accordingly. *See Thomas v. Colvin*, – F.3d. –, No. 15-2390, 2016 WL 3439015, at *6 (7th Cir. June 22, 2016) ("[T]he ALJ concluded from [the plaintiff]'s gap in treatment between August 2011 and September 2012 that her symptoms were not as severe as she alleged, but, as noted, he did not explore her reasons for not seeking treatment, another error"); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quotation omitted).

Although the ALJ did ask Plaintiff a few questions about her noncompliance at the hearing, she did not allow her or her attorney to fully answer, nor did she follow up on those questions, even when Plaintiff indicated that some of the gaps in treatment were because of her inability to obtain her medication. Plaintiff argues that the ALJ failed to consider that Plaintiff's medication regimen was inadequate to fully control her symptoms, a possibility that the medical expert testified to at the hearing, and also failed to consider the other reasons in the record that might explain some of her failure to take medication as prescribed, including financial reasons. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference.").

In this case, the failure to fully consider possible reasons for Plaintiff's perceived noncompliance is particularly troubling. There are indications in the record that some of the gaps in Plaintiff's perceived compliance may have resulted from her financial difficulties, and that even

when she is fully compliant, her diabetes treatment may itself be ineffective. Rather than address these possibilities or seek additional information from medical experts or Plaintiff's treating physicians, the ALJ concluded that many of Plaintiff's physical limitations were due to this perceived noncompliance and based the RFC on an assumption of what Plaintiff would be able to accomplish if her diabetes were well-controlled.

    B.    <u>Residual Functional Capacity</u>

In addition to these significant concerns about how the ALJ addressed Plaintiff's supposed noncompliance with diabetes treatment, Plaintiff argues that there are other errors in the RFC assessment. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

"The RFC is an assessment of what work-related activities the claimant can perform despite h[is] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, she must

consider all of the evidence that is relevant to the disability determination and provide enough analysis in her decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his [or her] conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Plaintiff argues that the ALJ failed to address several of Plaintiff's limitations in the RFC assessment. In particular, Plaintiff argues that the ALJ did not incorporate physical limitations caused by Plaintiff's cane use, headaches, and fatigue, or her mental limitations in concentration, persistence, and pace, and that other limitations are not supported by the record. The Commissioner argues that the ALJ included all of the limitations she found credible into the RFC.

### i. Ability to Walk or Stand

First, Plaintiff argues that there is no support for the ALJ's conclusion that Plaintiff is able to stand and walk for four hours in an eight-hour work day. Plaintiff argues that several physicians opined that Plaintiff could stand and walk for two hours or less during a work day, and that no medical opinions included an indication that Plaintiff would be able to walk for any more than two hours. The Commissioner argues that the ALJ properly considered the medical opinions, and the ALJ's assessment of an RFC is separate from a doctor's opinion of a claimant's abilities.

Several physicians opined as to Plaintiff's functional limitations. The ALJ gave "partial weight" to the opinions of the agency medical consultants, indicating that she added limitations to the RFC beyond those described by the consultants. The ALJ did not mention the consultants' opinion that Plaintiff would not be able to stand or walk for more than two hours during the work day. The ALJ "afforded some weight" to the opinion of Dr. Goldstein, who answered medical

interrogatories after the first hearing and concluded that Plaintiff was limited to less than sedentary work. The ALJ noted his opinion that Plaintiff would experience fewer limitations if she were fully compliant with her medication, and gave that as a reason to conclude that Plaintiff had fewer limitations than those he described. However, Plaintiff argues that there are no medical opinions in the record indicating that Plaintiff is capable of standing or walking for more than two hours during the work day, no matter how compliant she may be with her diabetes medication, and that even if her diabetes were well-controlled, that would not address Plaintiff's arthritis symptoms.

Although it is true that it is up to the Commissioner to determine a claimant's RFC, "adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner," and "opinions from any medical source on issues reserved to the Commissioner must never be ignored." SSR 96–5p, 1996 WL 374183, at *2-3 (July 2, 1996). In this case, the ALJ never mentioned the opinions limiting Plaintiff to only two hours of standing or walking during an eight hour day and did not describe the medical evidence she relied upon to conclude that Plaintiff was capable of walking for twice that amount of time. Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight*, 55 F.3d at 314 (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and h[er] conclusions," *O'Connor-Spinner*, 627 F.3d at 618. The ALJ failed to build that logical bridge in this case, leaving the Court unable to follow the reasoning behind the ALJ's conclusion that Plaintiff is capable of walking or even just standing for half of every work day.

A finding that Plaintiff is limited to sedentary work would lead to a conclusion that Plaintiff was disabled and entitled to benefits upon turning 50. *See* 20 C.F.R. § 404, Subpt. P, App. 2

("Individuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains."); *Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013) ("[T]he grids *mandate* a finding of disability at [the plaintiff]'s 50th birthday if she is limited to sedentary work."). Plaintiff argues that this compels a remand for award of benefits for the time period after Plaintiff turned 50 because the record can support only the conclusion that Plaintiff is capable of no more than sedentary work. Although the Court agrees that the ALJ has failed to draw a logical bridge from the evidence to her conclusion, an award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. In this case, the Court cannot conclude that Plaintiff is definitely limited to only sedentary work, only that the ALJ erred by not describing how the evidence supported her conclusion as to Plaintiff's RFC. Accordingly, the matter will be remanded for further proceedings.

    ii.  *Mental Limitations*

In addition to the ALJ's failure to support her conclusion about the length of time Plaintiff is capable of standing or walking in a work day, Plaintiff argues that she also failed to incorporate other limitations into the RFC. In particular, Plaintiff argues that although the ALJ found that Plaintiff had limitations in concentration, persistence, and pace, the RFC did not account for these limitations. The Commissioner argues that because the limitations in concentration, persistence, and pace were mild, they were not a severe impairment and did not significantly limit Plaintiff's mental ability to do basic work activities.

In this case, the ALJ mentioned Plaintiff's mild limitations in concentration, persistence, and

11

pace, but did not explain how those limitations might affect or further limit Plaintiff's physical ability to do work, nor did she explain how she took into account those limitations into the RFC. The ALJ need not specifically include the limitations in the RFC, but she must consider the combination of impairments, and explain how she incorporated the mental limitations into the RFC. "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citing S.S.R. 96-8p; *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003)*; see also Underwood v. Colvin*, No. 2:11-CV-354-JD-PRC, 2013 WL 2420874, at *2 (N.D. Ind. May 30, 2013) ("While it is true that the ALJ need not specifically include limitations on concentration, persistence and pace in the RFC finding, . . . the requirement that the ALJ 'consider' such limitations has certainly been interpreted to mean that a real 'evaluation' of the effect of those limitations on the claimant's ability to work must take place. The ALJ did not do that, here. After finding mild limitations on concentration, persistence and pace, the ALJ did not include those findings in the RFC; did not explain why or how those findings were incorporated into the RFC as otherwise written; and in fact did not give any indication that those findings were considered or evaluated at all in arriving at the RFC.") (citations omitted). To the extent that the record does not contain enough information to ascertain the effect of Plaintiff's limitations on her ability to do work, including the amount of time Plaintiff would be able to maintain concentration, persistence, and pace in a workday, the ALJ is reminded of her responsibility to develop the record, which may include ordering additional examinations or contacting medical sources to obtain records and evidence necessary to making the determination. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out

an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996)); 20 C.F.R. §§ 404.1512(d)(1), 416.919(b)); *see also Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (citing 20 C.F.R. §§ 416.912(d)-(f), 416.919, 416.927(c)(3)) (other citations omitted).

### iii. Other Limitations

Plaintiff also points to other limitations that were not incorporated into the RFC, including Plaintiff's fatigue, headaches, and cane use. Plaintiff argues that the evidence demonstrates that Plaintiff continues to have severe headaches even after her brain surgery and despite taking pain medication, and that Plaintiff complained of fatigue. The ALJ noted several times in the record where Plaintiff stated to physicians that her headaches were milder than they had been or only occasional, and the ALJ indicated that the rest of her complaints of headaches and fatigue would be resolved if she were compliant with her diabetes treatment.

In addition, despite repeated mentions of cane use in the record, the ALJ also found that Plaintiff's cane was not medically required, apparently because the record did not include a prescription for the cane and because she did not use it all the time. Not only do canes not require a prescription, but the medical records do indicate cane use, as reflected in the ALJ's opinion, and Plaintiff testified that her physician suggested that she use it and that she continued to use the cane periodically or to rely other supportive aids, including leaning on family members when walking. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription."). The regulations specifically remind ALJs to take into account that, for example, "[a]n individual may have structured his or her activities to minimize symptoms

13

to a tolerable level by avoiding physical activities . . . that aggravate his or her symptoms." SSR 16-3p, 2016 WL 1119029, at *9 (Mar. 16, 2016) *superseding* SSR 96-7p, 1996 WL 374186, at *8 (Jul. 2, 1996) ("The individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms."). The ALJ did not include even the occasional need for a cane or other support in the RFC, without explanation, and did not ask the VE if use of a cane would further restrict available jobs. *See, e.g., Ross v. Barnhart*, 119 F. App'x 791, 795 (7th Cir. 2004) ("'The RFC is an assessment of what work-related activities the claimant can perform despite her limitations.' In considering a claimant's RFC, an ALJ is expected to take into consideration all relevant evidence, both medical and non-medical.") (quoting *Young*, 362 F.3d at 1000); 20 C.F.R. §§ 404.1545(a)(1), (a)(3); 416.1545(a)(1), (a)(3)).

The Court is also concerned that the ALJ failed to consider the combination of Plaintiff's impairments. "Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523); *Golembiewski*, 322 F.3d at 918). In particular, as Plaintiff argued, the ALJ failed to address how Plaintiff's obesity, in combination with her other impairments, would limit her ability

to work. "Social Security Ruling 02-1p requires an ALJ to consider the exacerbating effects of a claimant's obesity on her underlying conditions (even if the obesity is not itself a severe impairment) when arriving at a claimant's RFC," *Hernandez v. Astrue*, 277 F. App'x 617, 623-24 (7th Cir. 2008) (citing SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002)) (other citations omitted); *see also Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (finding that, even if obesity is not a severe impairment itself and "merely aggravates a disability caused by something else[,] it still must be considered for its incremental effect on the disability"). Ruling 02-1p provides that in evaluating obesity in assessing RFC, "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-1p, at *6. Further, Ruling 02-1p explains that an ALJ's RFC determination must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *Id.* (citing SSR 96-8p). On remand, the ALJ is directed to consider the combination of Plaintiff's impairments, even those that are not severe in isolation, and to specifically address the impact her obesity and her limitations in concentration, persistence, and pace have on her ability to perform work, and to thoroughly analyze Plaintiff's fatigue and headaches and how they may cause further limitations.

    C.    Evaluation of Symptoms

Plaintiff argues that the ALJ improperly discounted her reported symptoms. The Commissioner argues that the ALJ's opinion is supported by substantial evidence.

In deciding how much weight to give a claimant's report of her own symptoms, the ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Plaintiff argues that the ALJ did not explain which of her allegations she credited. Much of the ALJ's analysis of Plaintiff's symptoms rested on what she perceived to be Plaintiff's non-compliance, addressed above. In addition, she also emphasized that on one medical intake statement Plaintiff "listed her occupation as 'homemaker,' which is not synonymous with her claims of disabled." AR 22. Plaintiff argues that this statement reads too much into the term "homemaker," which indicates a failure to work outside the home for pay but in this context does not speak to Plaintiff's daily activities. And Plaintiff's testimonies about her daily activities indicated that she needed assistance to perform household chores and relied on her son for transportation and for literal physical support when she did not use her cane. The ALJ does not explain how Plaintiff's very limited physical activities are inconsistent with her claimed limitations. The Seventh Circuit Court of Appeals has repeatedly criticized credibility determinations that are based on a plaintiff's ability to take care of her personal hygiene, children, or household chores, as these alone are not sound bases for a credibility determination. *See, e.g., Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities. The ALJ here ignored [the plaintiff]'s numerous qualifications regarding her daily activities" and methods

16

of coping with pain); *Zurawski*, 245 F.3d at 887 (asserting that daily activities, such as doing laundry, helping children prepare for school, cooking, and washing dishes do not necessarily undermine or contradict a claim of disabling pain). To the extent that the ALJ was also using Plaintiff's ability to perform some activities of daily living as indicating an ability to perform full-time work, the Seventh Circuit has repeatedly emphasized that a person's ability to perform daily activities does not indicate an ability to work outside of the home. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The Plaintiff's] ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

This case is being remanded for a new RFC and complete assessment of Plaintiff's compliance with her treatment plan. On remand, the ALJ is directed to thoroughly explain her credibility assessment in accordance with the applicable regulations.

**V.     Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Brief in Support of Plaintiff's Motion for Summary Judgment [DE 15] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 29th day of August, 2016.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record